# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF INDIANA
### HAMMOND DIVISION

MAIZE FAUST,               )
             Plaintiff,     )
                        )
       v.            )       No. 2:11 CV 425 JM
                        )
MENARDS, INC.,          )
             Defendant.   )

## <u>ORDER and OPINION</u>

This is a personal injury action that was initiated in state court by plaintiff Maize Faust ("Faust") on July 22, 2011. Defendant Menard, Inc., incorrectly named in the complaint as "Menards, Inc.," removed the action to this court on November 18, 2011, on the basis of diversity of citizenship pursuant to 28 U.S.C. § 1332(a)(1) and 28 U.S.C. § 1441. Menard then moved to dismiss the action pursuant to Fed. R. Civ. P. 12(b)(2),(4), and (5) on the basis of lack of personal jurisdiction, insufficient process, and insufficient service of process, and pursuant to FED. R. CIV. P. 41(b) for failure to prosecute.[1]

In addition, after Menard got wind (from a document Faust called "Objection to Menard, Inc.'s Petition for Removal, which she has withdrawn) that Faust was asserting that its removal was untimely, it filed a "Motion For Enlargement of Time to File Petition for Removal," by which it hopes to obtain an extension of time—after the fact, in case the court doesn't agree with its alternative argument that the removal was

---

[1] Menard concedes in its reply memorandum (DE # 10) that its motion and opening brief in support should have cited the INDIANA RULES OF TRIAL PROCEDURE, not the FEDERAL RULES OF CIVIL PROCEDURE, because service of process occurred (or was at least attempted) prior to removal. FED. R. CIV. P. 81(c)(1)(federal rules apply in civil actions only after removal); *Romo v. Gulf Stream Coach, Inc.*, 250 F.3d 1119, 1122 (7th Cir. 2001). It maintains that its initial argument and analysis cited Indiana precedent, however, and so was proper despite citing the wrong rules. (DE # 16 at 2, ¶ 2.)

timely in the first place—in which to remove the case. Faust has responded opposing both the motion to dismiss and the motion seeking an extension of time, and filed her own motion to remand the case to state court for the not surprising reason that she believes the removal was untimely. These are the matters before the court.

The pertinent facts, outlined in the most skeletal fashion the court finds possible, are these. Faust filed her complaint in state court on July 22, 2011. She attempted service of the summons and complaint, both naming "Menards, Inc." as the defendant, by certified mail addressed to Menards, Inc. c/o Registered Agent[,] The Prentice-Hall Corporation." (DE # 2-1 at 2). Prentice-Hall Corporation (hereinafter "the registered agent" or "Menard's agent") accepted the certified mail on August 3, 2011, but immediately sent a letter to Faust's attorney titled "Rejection of Service of Process" which stated, in relevant part, that it would not forward service to "the intended party" for the reason that "[b]ecause two or more companies can have very similar names, the name of the company to which service of process is directed MUST BE IDENTICAL to the company name on file with the Secretary of State or other appropriate state agency." (DE # 2-2 at 2.) Faust's attorney apparently took no action in response to the letter, but on October 19, 2011, she faxed a copy of the complaint to Zurich Services Corporation, the third-party insurance administrator for Menard. (DE # 2 at 2, ¶ 7.) The next day, Zurich Services Corporation notified Menard's Corporate Legal Manager of the suit via e-mail. (DE 2-5 at 2, ¶ 6.) Menard's attorney filed an appearance in state court on November 7, 2011, and on November 18, 2011, Menard filed its petition for removal. (DE # 2.)

2

In a nutshell, Menard's argument is that it has never properly been served. (DE # 2 at 3, ¶ 10.) That is the reason that Menard believes its removal was timely and that the case should be dismissed. The heart of Menard's argument, with additional details that will come out as the following analysis proceeds, is Faust attempted to serve "Menards, Inc.," and no such entity exists. As Menard's corporate counsel, Timothy Proue, states in an affidavit filed in support of its motion to dismiss: "I have no personal knowledge of any corporation identified as Menards, Inc." (DE # 7-7 at ¶ 4.) It therefore follows, Menard reasons, that both process and service were not sufficient, and so properly "rejected' by Menard's registered agent.

This is an argument that a non-lawyer would find comical, given the plethora of retail stores Menard (or some entity under its corporate umbrella) operates with giant letters on the front that say "Menards," and given that the URL "menards.com" brings up the website for the Menard retail operation, which website, no less, prominently features the logo "Menards" followed by a registered trademark symbol. A last laugh for the layperson: the URL "menard.com" brings up the website for the Menard Electric Cooperative in Petersburg, Illinois.

To lawyers and judges, however, Menard's argument isn't as comical, it is just unconvincing. Rule 4.15(F) of the Indiana Rules of Trial Procedure provides: "No summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond." Relying on this provision and principles of due process under the United States Constitution, Indiana courts have consistently held that service is effective and

personal jurisdiction over a defendant attaches when Indiana's rules for service are substantially complied with, and the process and manner of service are reasonably calculated and likely to inform the party being sued of the existence of the suit. *Glennar Mercury-Lincoln, Inc. v. Riley*, 338 N.E.2d 670, 675-76 (Ind. App. 1975) "[I]f the summons and service thereof are 'reasonably calculated to inform,' the fact that the party served lacks actual knowledge of the suit does not defeat the jurisdiction this [sic] acquired." 338 N.E.2d at 675.

In the *Glennar* case, the summons and complaint identified "Glennar Mercury-Lincoln, Inc." ("Glennar") as the defendant being sued. The plaintiff, Riley, attempted to serve Glennar by mailing the summons and complaint by certified mail to Glennar's registered agent, an individual named Glen R. Pitman ("Glen R."). The envelope was addressed, however, not to an individual but to "Glen R. Pitman, Inc.," ("Pitman, Inc."), at a street address ("20 South 6th St.") which was Glennar's place of business, but not Pitman, Inc.'s official place of business. Nevertheless, Glen R., the individual and registered agent, maintained an office at 20 South 6th St., as did Pitman, Inc. As a further complication, Glen R., the individual, also served as the registered agent for Pitman, Inc.

The office staff of both corporations operating at the 20 South 6th St. address were supervised by a Charles Galema. Glen R., the individual, authorized Galema to accept and sign for all certified mail addressed to either corporation. Following the ordinary course of business, Galema accepted and signed for the envelope addressed to Pitman, Inc., and placed it on Glenn R.'s desk. Glennar took no action, and a default

judgment was entered against it. Although Glen R. denied ever having seen the summons and complaint, the trial court refused to set the default judgment aside.

For present purposes, Glennar's arguments on appeal can be simplified a bit. Glennar argued that there was absolutely no service upon it or its registered agent because the summons and complaint were addressed to Pitman, Inc., and that corporate entity was not Glennar's registered agent. 338 N.E.2d at 674. Plaintiff Riley responded that there was actual service on Glennar's registered agent, Glenn R.—Galema had signed for the mail and put it on Glenn R.'s desk—and that adding "Inc." after Glen R.'s name was nothing more than a misnomer. As a result, the trial court had correctly applied the general rule for misnomers: if the person actually intended to be sued is served, but the process uses a wrong name, the person is bound by a default judgment. 338 N.E.2d at 675.

The court of appeals affirmed the trial court, finding that substantial compliance with the rules for service can be enough when the summons and service thereof are "reasonably calculated" to inform the defendant of the suit. *Id*. Because the summons and complaint had correctly named the defendant, and were in fact delivered to the defendant's registered agent at his address, which was also the address of the defendant itself, the court of appeals thought it "obvious" that "the process and manner of service thereof was reasonably likely to inform Glennar of Riley's suit." 338 N.E.2d at 676.[2]

---

[2] Glennar also argued that the trial court erred by not setting aside the default on account of excusable neglect pursuant to Ind. Tr. R. 60(B)91), because Glenn R. had denied ever actually seeing the summons and complaint, and the evidence did not support the trial court's contrary finding. The court of appeals held that the trial court did not abuse its discretion in finding, based on the available evidence, that Glenn R.

(continued...)

The discussion could end here, almost. Nothing more needs to be said, really, than that a summons and complaint naming "Menards, Inc." and sent to the registered agent of "Menard, Inc.," the entity which should have been named in the summons and complaint, is nothing more than a misnomer, and "reasonably likely" to give Menard, Inc., notice of the suit. For that reason, and because it is obvious that such process and manner of service was "reasonably calculated" to inform the proper party of the action against it, under Ind. R. Tr. P. 4.15(F) service was sufficient and will not be set aside. Menard insists, however, that the "reasonably calculated" standard has not been met in the present circumstances because, it maintains, it itself was never served, its registered agent having "rejected" service because of the misnomer. Therefore, it itself never had knowledge of the action until 2-1/2 months later, when plaintiff's counsel faxed a copy of the complaint to Menard's third-party insurance administrator, which then informed Menard of the suit. (DE # 19 at 4-5, ¶¶ 14-15.)

Although the parties have not discussed the *Glennar* case at length, Menard acknowledges that *Glennar* holds that actual knowledge of the suit by the party being sued is not dispositive of the issue whether service was "reasonably calculated" to inform, but only a relevant factor in the inquiry. (DE # 19 at 4, ¶ 15.) Menard argues that what makes the present circumstances different than *Glennar*, and other relevant cases Faust cites, such as *General Finance Corp. v. Skinner*, 426 N.E.2d 77 (Ind. Ct. App. 1981), is that there was no service here because its registered agent "properly rejected the

---

[2](...continued)
did have actual knowledge of the summons and complaint.

plaintiff's attempt at service because of the identification of the defendant as 'Menards, Inc.'" (DE # 19 at 7, ¶ 19.)

Menard's attempt to distinguish cases such as *General Finance Corp.* is not entirely persuasive. In that case, the entity authorized to do business in Indiana, whose registered agent plaintiff served, was "General Finance Corporation of Indiana." 426 N.E.2d at 79. The entity plaintiff named in her process, however, was "General Finance Corporation," the parent of General Finance Corporation of Indiana, and which was not licensed to do business in Indiana. *Id.* The registered agent returned the process to the clerk of the court along with a letter stating that it was not the resident agent for General Finance Corporation. *Id.* The court held that where General Finance Corporation of Indiana was, in effect, operating as a "departmental branch" of its parent rather than as an independent entity, when the plaintiff served the agent of the subsidiary that gave sufficient notice to, and constituted valid service on, its parent. *Id.* at 86.[3] Menard argues that the present case is different because plaintiff did not serve its corporate subsidiary, instead she served "a non-existent entity." (DE # 19 at 6-7, ¶ 19.)

It may be true that *General Finance Corp.* should be read as standing for nothing more than the proposition that service upon a subsidiary which is acting as a department of the corporate parent is sufficient service on the parent, but that does not explain why service on Menard, Inc.'s proper agent for service, but using the misnomer "Menards, Inc." was not process reasonably calculated to give notice to Menard. This is

---

[3] To be precise, the holding of the case is that the trial court did not abuse its discretion in entering a default judgment against General Finance Corporation under the circumstances. The appellate court's analysis of the corporate relationship and the particulars of service is its explanation for that holding.

7

certainly no worse than the misnomer in *Glennar*, where the process was addressed to an entity which was not even the proper agent for service. All of Menard's arguments why the present circumstances are different than a typical misnomer case boil down to one thing: its assertion that its agent "properly rejected" service because the service was addressed to a non-existent entity. (DE # 19 at 7, ¶ 19.) Menard has cited no legal authority establishing that a registered agent can "reject" service in these circumstances, however, and it is drawing a line between service upon it, as opposed to its registered agent, where no such line exists.

First, as a factual matter, Menard's registered agent did not "reject" the attempt at service. It signed for and accepted the certified mail containing the summons and complaint. Then the agent sent a letter to plaintiff's attorney titled "Rejection of Service of Process" which purported to reject service on the basis that "party served, as listed above" was not "IDENTICAL to the company name on file with the Secretary of State or other appropriate state agency." (DE # 2-2 at 2.) Menard has provided no authority holding that a registered agent who has accepted service which contains a misnomer can then unilaterally "reject" that service, and have the rejection be effective, when the service was reasonably calculated to give notice to the proper party. In fact, the *General Finance Corp.* case indicates otherwise. In that case the registered agent did more than was done here,  by returning the process to the clerk of the court along with a letter stating that it was rejecting service because it was not the registered agent for the entity named in the process.[4] 426 N.E.2d at 79. Service was, nevertheless, found to be valid.

---

[4] The court notes that the phrasing of Menard's agent's letter, which was not sent to the clerk, suggests that the agent recognized who it was that plaintiff was attempting

(continued...)

Second, Menard's argument that because a "non-existent" entity was served, this makes all the difference, is not persuasive. It may be true that no corporate entity named Menards, Inc., exists, but as Menard's own website states, in the "Trademarks/Service Marks and Copyrights" section on the "Privacy & Terms" page: "**Menards**®, Menards.com®, Save big money®, and all other trademarks service marks, trade names and logos used by Menards.com® are registered trademarks or service marks of Menard, Inc."[5] (Bold emphasis added.) In other words, Menard does business as Menards, as anyone other than the most unobservant resident of the Great Lakes/Midwest region would know,[6] and Menard hasn't cited any legal authority which states that its registered agent can ignore this reality and attempt to reject service on this basis. If plaintiff had served Menard's chief executive office at Menard's corporate headquarters, rather than its resident agent, an argument that service was insufficient due to the misnomer "Menards" would be ridiculous.

> A defendant who is clearly identified by a summons and complaint and who has been served with those documents may not avoid the jurisdiction of the district court merely because he is incorrectly named in them. Professor Moore has suggested that the test of whether a misnomer invalidates process should be whether, on the basis of an objective standard, it is reasonable to conclude that the plaintiff had that defendant

---

[4](...continued)
to serve, and neither did the agent affirmatively deny being the agent for an entity named "Menards, Inc." Menard has filed no affidavit from its agent in which the agent claims it did not recognize that Menard was the party plaintiff intended to serve.

[5] http://www.menards.com/main/privacy-terms/c-3439.htm, accessed on August 7, 2012.

[6] It seems likely that any person on the street could sing the TV-commercial jingle: "You save big money, you save big money, when you shop Menard**s**."

9

in mind or whether the plaintiff "actually meant to serve and sue a different person."

*Tremps v. Ascot Oils, Inc.*, 561 F.2d 41, 44 (7th Cir. 1977) (citation omitted).

It is this hypothetical scenario—Menard's CEO ignoring service of a complaint naming "Menards, Inc.," and the likelihood of a court holding he or she was justified in doing so, because such process was not reasonably calculated to give Menard notice that it was being sued—that brings the court to the crux of Menard's argument. Menard is arguing that "it" itself has never been served in this case, because only its agent for service of process received the process containing the misnomer. Menard is resting on a distinction which does not exist. As stated in another context—whether a complaint containing a misnomer, but served on the correct party's registered agent on the last day of the limitations period, gives the correct party notice within the limitations period—but using reasoning which applies equally to the circumstances herein:

> Corporations receive notice and have knowledge only through real persons. Which natural persons are "the corporation" for a particular purpose is presumptively a question of state law.
>
> . . .
>
> Sealed Air believes that a corporation "receive[s] . . . notice" only when one of its senior employees obtains knowledge. An agent for service of process is insufficient, Sealed Air believes, because the agent is an independent contractor for many firms rather than an employee of Sealed Air and does not occupy a responsible position in the corporate hierarchy. So far as we can tell, however, no state's law draws such a line between employees and other agents, or between high-level employees and others. Usually any agent's knowledge is attributed instantly to the corporation, so long as the agent has actual authority on the question. "A person has notice of a fact if his agent has knowledge of the fact . . . under circumstances coming within the rules applying to the liability of a principal because of notice to his agent," Restatement (2d) of Agency

§ 9(3) (1958). The more particular "rules applying to the liability of a principal because of notice to his agent" say that unless the person giving notice knows that the agent has an interest adverse to the principal's, "a notification given to an agent is notice to the principal if it is given . . . to an agent authorized to conduct a transaction, with respect to matters connected with it as to which notice is usually given to such an agent", *id*. at § 268(1)(c). That fairly describes notice about a lawsuit given to a registered agent for service of process.

                                          . . .

Treating notice to the registered agent as sufficient is not constructive (which is to say, no) notice. The agent has actual notice. Because corporations are nothing but bundles of agency relations, there is no other person to whom the "real" notice comes after an agent gets notice. When a firm appoints someone (here, some other corporation) to be its agent for service of process, it is saying that this is the person whose knowledge counts. . . . Notice to the special agent—a person having both apparent and actual authority to receive "notice" on behalf of the corporation—is always enough.

This does not mean that a complaint about a defective automobile naming as defendant General Motors allows the plaintiff to substitute Ford just because the two happen to share an agent for service of process. Rule 15(c)(1) requires notice; Rule 15(c)(2) adds that relation back is not possible unless within the period of limitations the person to be added "knew or should have known that, but for a mistake concerning the identity of the proper party, the action would have been brought against the party." A firm could have notice (Rule 15(c)(1)) without recognizing that it was the right party (Rule 15(c)(2)). **A complaint naming GM that went on and on about the plaintiff's Thunderbird would alert Ford's agent that Ford was the right party; a complaint mentioning a Corvette would not.** There can be no serious question in our case under Rule 15(c)(2): Instapak Corporation is a wholly-owned, non-operating subsidiary of Sealed Air, so the complaint could have been meant for no one else.

**In the end, our case does not differ from a misnomer—a complaint naming, say, "Sealed Air Incorporated" served on the last day of the limitations period. Plaintiff could swap "Corporation" for "Incorporated" without hindrance from the rules.** *Dandrea v. Malsbary Mfg. Co.*, 839 F.2d 163 (3d Cir.1988). Wright, Miller & Kane, Federal Practice and Procedure § 1498 at 134-36. **We hold that a corporation "receive[s] . . . notice" within the meaning of Rule 15(c)(1) no later than the date its registered agent for service of process receives the**

>**complaint, even though the complaint does not identify that corporation as a party.**

*Peterson v. Sealed Air Corp.*, 902 F.2d 1232, 1236-37 (7th Cir. 1990) (bold emphasis added).

In other words, just as a complaint served on Ford's registered agent naming GM, but going on about a Thunderbird, would be sufficient to give Ford, via its registered agent, notice it was being sued, so did the summons and complaint in the present case naming "Menards, Inc." give Menard notice, through its registered agent, of the suit against it. Service on Menard's registered agent was no different than service on Menard itself—it *was* service on Menard itself. "When a firm appoints someone (here, some other corporation) to be its agent for service of process, it is saying that this is the person whose knowledge counts." *Id*. at 1237.

What this means is that, contrary to Menard's arguments, the court concludes that process and service thereof in the present case were reasonably calculated to give Menard notice of the suit, and because of Ind. R. Tr. P. 4.15(F), service will not be set aside. This decision has the following consequences. First, Menard's motion to dismiss this action for lack of personal jurisdiction, insufficient process, insufficient service of process, and for failure to prosecute,[7] will be denied.

---

[7] Menard's argument on failure to prosecute is that, after its agent sent plaintiff's counsel the letter "rejecting" service, she took no steps to cure the problem (under the court's analysis, she didn't need to), and waited 77 days—17 more than the 60-day period for failure to prosecute under Ind. R. Tr. P. Ind. 41(E) before taking any action to pursue the case. It will be up to the state court, on remand, to determine whether this is a "lengthy period of inactivity . . . enough to justify dismissal." *American Family Ins. Co. v. Beazer Homes Ind., LLP,* 929 N.E.2d 853, 857 (Ind. Ct. App. 2010).

Second, the court rejects Menard's argument that it removed this case in a timely fashion. In response to plaintiff's motion to remand because Menard did not remove the case within thirty days after service as required by 28 U.S.C. § 1446(b)(1), Menard argues that its removal was timely because it has never been properly served, and it removed the case within thirty days after "it" received a copy of the complaint from its third-party insurance administrator. (DE # 19 at 3-4.) This again is an unsuccessful attempt to distinguish itself from its agent, and to disregard the service on the agent. Menard's time for filing its notice of removal was triggered when its agent was served. *See Roe v. O'Donohue*, 38 F.3d 298, 304 (7th Cir. 1994)[8] ("we hold that the 30 days commences when the defendant, *or its authorized agent*, comes into possession of a copy of the complaint" (emphasis added)).

This leaves one matter to be decided. Because Menard's removal was untimely, Faust's motion to remand the case to state court must be granted; that is, unless Menard's motion for an enlargement of time pursuant to FED. R. CIV. P. 6(b)(1)(B) to file its notice or removal can be granted. Menard argues that its removal, if untimely, results from excusable neglect because its agent did not communicate the existence of the suit to Menard, believing it had "rejected" service. In cases of excusable neglect, RULE 6(b)(1)(B) allows the court to extend a time period even after the period has

---

[8] *Roe*'s holding that formal service is not required was abrogated by *Murphy Bros., Inc. v. Michetti Pipe Stringing, Inc.*, 526 U.S. 344 (1999). As explained in *Edling v. IMI Systems, Inc.*, 2002 WL 240135, 2 (N.D. Tex. 2002), this does not mean that the general rule that the time for removal starts when the agent is served, no longer exists.

expired. However, Menard has cited no authority allowing the court to use RULE 6(b)(1)(B), which logically would seem to apply only to time periods set out in FEDERAL RULES OF CIVIL PROCEDURE, to extend a statutory time period, such as that for removal found in 28 U.S.C. § 1446(b)(1).

The court has not been able to find any Seventh Circuit authority on the issue, but the sparse out-of-circuit cases that exist state that RULE 6(b) cannot be used to extend the statutory time period for removal.[9] *See Stone Street Capital, Inc. v. McDonald's Corp.*, 300 F. Supp.2d 345, 350-51 (D. Md. 2003) (collecting cases). In addition, the Seventh Circuit has stated as a general rule:

> District judges lack authority to extend statutory periods of limitations. A district judge can't say something like: "The statute gives a plaintiff 90 days to sue, but this is too short, so I am extending the time to 14 months."

*Lee v. Cook County, Ill.*, 635 F.3d 969, 972 (7th Cir. 2011) (discussing limitations period under 42 U.S.C. § 2000e-5(f)(1)). Menard hasn't argued the issue, and so has given the court no reason to think this general rule should not be followed here. Were the court to hold otherwise, it is unlikely that the excusable neglect standard would be met, anyway. Menard chose its agent for service, and that agent didn't neglect the case, it made a conscious decision not to notify Menard of the suit, and instead "reject" service by notifying plaintiff's counsel that service was rejected. "The risk of a breakdown in

---

[9] It is worth noting because of the similarity of the issue that the majority view is that RULE 6(d), which adds three days to time periods following certain types of service, does not apply to the 30-day period for removal. *See Knight v. J.I.T. Packaging, Inc.*, 2008 WL 4981091 at * 2-3 (N.D. Ohio 2008) (collecting cases).

14

communication between [principal] and [registered agent] is one that should be borne by [principal], not a third-party complainant." *Precision Erecting, Inc. v. Wokurka*, 638 N.E.2d 472, 474 (Ind. Ct. App. 1994).[10]

For the above reason: 1) Menard's motion to dismiss (DE # 7) is **DENIED**; 2) Menard's motion for enlargement of time (DE # 11) is **DENIED**; and Faust's motion to remand (DE # 15) is **GRANTED**. The clerk is directed to return the case to the state court from which it originated. Upon proper evidence, costs and actual expenses will be allowed pursuant to 28 U.S.C. § 1447(c).

**SO ORDERED.**

Date: August 9, 2012

s/James T. Moody
JUDGE JAMES T. MOODY
UNITED STATES DISTRICT COURT

---

[10] Menard distinguishes *Precision Erecting* on the basis that Precision's registered agent gave it notice of the suit by telephone, while Menard's agent gave it no notice. (DE # 16 at 3-4, ¶ 5.) As explained above, notice to Menard's registered agent *is* notice to Menard. *Peterson*, 902 F.2d at 1236-37. Menard also argues that service wasn't made on the "proper person" because "Menards, Inc." does not exist and so has no registered agent. (DE # 16 at 3-4, ¶ 5.) Nonsense. Plaintiff was attempting service on Menard, and so the "proper person" was served, even though plaintiff used a misnomer.